SPORTATORIUM, Inc., et al. v. STATE.

No. 12619.

Court of Civil Appeals of Texas. Dallas.

Feb. 12, 1938.

Dissenting Opinion Feb. 19, 1938.

Rehearing Denied March 26, 1938.

Mann, Irion & Mann and Sam McCorkle, all of Dallas, for appellants.

Andrew Patton, Crim. Dist. Atty., and Guy L. Mann and E. G. Moseley, Asst. Dist. Attys., all of Dallas, for the State.

YOUNG, Justice.

Appellee, State of Texas, acting by and through Andrew Patton, District Attorney, was granted a temporary injunction in a district court of Dallas county against appellants, on November 17, 1937, restraining the latter parties from violating the provisions of article 614b of the Vernon's Annotated Texas Penal Code; however, on this appeal the assignments urged are the same as would be presented following a final judgment of permanent injunction in the trial court. · Although a statement of facts accompanies the record, all of the assignments of appellants are directed to the constitutionality of said chapter 62, page 131, Acts of the 43d Legislature, 1934, 2d Called Session, otherwise known as article 614b of Vernon's Ann. Pen. Code. The parties to this record have been previously before this court in Sportatorium, Inc., v. State, 104 S.W.2d 912; but it is conceded that the points here presented were not directly involved in that appeal. See, also, Braden v. State, 108 S.W.2d 314, for conclusions reached by the Waco Court of Civil Appeals under similar facts. Following are the provisions of the law under attack:

"Section 1. It shall hereafter be unlawful for any person to conduct in public competition for prizes, awards or admission fees, any personal, physical or mental endurance contest that continues longer than twenty-four (24) hours.

"Sec. 2. It shall hereafter be unlawful for any person to conduct, within any period of one hundred sixty-eight (168) hours, in public competition for prizes, awards, or admission fees, more than one (1) such personal, physical, or mental endurance contest at the same place or location, and in which any of the same contestants engage.·

"Sec. 3. It shall hereafter be unlawful for any contestant to engage in any personal, physical or mental endurance contest for a period of longer than twenty-four (24) hours.

"Sec. 4. It · shall hereafter ́ be unlawful for any person to engage, within any period of one hundred sixty-eight (168) hours, in more than one (1) personal, physical or

mental endurance contest which is conducted in the same place or location.

"Sec. 5. Each promoter of or person conducting any personal, physical or mental endurance contest in public competition for prizes, awards or admission fees, who shall violate any provision of this Act, or any person who shall enter any contest that violates any provision of this Act, shall be fined not less than $100.00 nor more than $1000.00 for each offense, or confined in the county jail not less than thirty (30) days nor more than ninety (90) days, or by both such fine and imprisonment.

"Sec. 6. The provisions of this Act shall not apply to any athletic contest of schools, colleges or universities of the State nor to any trial contest for the purpose of testing the strength and capacity of materials and machinery of any kind.

"Sec. 7. Any house, structure, building, place or open air space that is being used for the purposes in violation of the provisions of this Act is hereby declared to be a common nuisance. Any person who knowingly maintains or assists in the maintaining of such a place is guilty of maintaining a nuisance.

"Sec. 8. Whenever the Attorney General or the district or county attorney has reliable information that such a nuisance exists, the Attorney General or the district attorney or county attorney under his direction, shall file in the name of the State in the county where the nuisance is alleged to exist against whoever maintains such nuisance to abate and enjoin the same. If judgment be in favor of the State, then judgment shall be rendered abating said nuisance and enjoining the defendants from maintaining the same, and ordering the said house to be closed for one year from the date of said judgment, unless the defendants in said suit, or the owner, tenant, or lessee of said property make bond payable to the State at the county seat of the county where such nuisance is alleged to exist, in the penal sum of not less than one thousand nor more than five thousand dollars, with sufficient sureties to be approved by the judge trying the case, conditioned that the acts prohibited in this law shall not be done or permitted to be done in said house. On violation of any condition of such bond, the whole sum may be recovered as a penalty in the name and for the State in the county where such conditions are violated, all such suits to be brought by the district or county attorney of such county." Sections 9, 10 and 11 being immaterial, are not set out.

Appellants have advanced some 13 propositions in support of their contention, which may, for practical purposes, be grouped into three classes—the first, second, and third of which propositions complain of arbitrary distinction between persons of the same class, in violation of sections 3 and 19, of article 1, Texas Constitution, article 2, Texas Code of Criminal Procedure, and section 1 of the Fourteenth Amendment of the U. S. Constitution. The fourth proposition complains of the nuisance features of the act, claiming the matters regulated not being a nuisance in fact; and propositions 5 to 13 attack the various provisions of the act and the wording thereof, on the ground of "indefiniteness" and "uncertainty," inhibited by article 1, section 10 of our State Constitution; also articles 1, 6 and 8 of the Texas Penal Code, as well as the Fourteenth Amendment to the U. S. Constitution.

The basic laws, both state and national, above quoted, which appellants assert the granting of this temporary injunction infringes upon, severally provide:

Art. 1, § 3, State Const.: "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

Id., § 10: "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself, and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him."

Id., § 19: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Article 2, Code of Crim.Proc.: "Due course of law. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. (Bill of Rights, § 19)."

Article 1, P.C. "Design of the Code. The design of enacting this Code is to define in plain language every offense against the laws of this State, and affix to each offense its proper punishment."

Article 6, P.C. "Unintelligible law not operative. Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it cannot be understood, either from the language in which it is expressed, or from some other written law of the State, such penal law shall be regarded as wholly inoperative."

Article 8, P.C. "Words, how understood. Words which have their meaning specially defined shall be understood in that sense, though it be contrary to their usual meaning; and all words used in this Code, except where a word, term or phrase is specially defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed."

Section 1 of Fourteenth Amendment, U. S. Const. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

 The act in question can be classified as penal in nature, the penalty provided for its violation as a criminal law being a fine and jail sentence, and cumulative thereof, through suppression by civil proceedings as a common nuisance. The injunction features of the law are therefore more in the nature of additional punishment for its infraction than the establishment of a rule of civil conduct, as illustrated by the principles announced in road law cases. West Texas Coaches v. Madi, Tex.Com. App., 26 S.W.2d 199. Hence, the rule of strict construction should apply in testing the legal sufficiency of the law under consideration as a criminal statute. State v. Duke, 104 Tex. 355–370, 137 S.W. 654, 138 S.W. 385; Green v. State, Tex.Civ.App., 49 S.W.2d 519. "The general rules governing the construction of penal statutes apply in construing statutes under consideration attempting to cover public nuisances or acts in the nature thereof." Waits v. State, Tex. Civ.App., 76 S.W.2d 545, 546, citing Duke Case, supra. Appellants properly state that every act made penal by law invades, to the extent defined therein, the constitutional guaranty of liberty and use of property. It is also conceded that statutes regulating physical endurance contests are well within the police powers of the Legislature, provided they are not obnoxious in material respects to our state and national organic laws and existing statutes; applying thereto the well-settled rules of statutory construction. Does this law make a distinction between persons of the same class, in providing that it shall not apply to "any athletic contest of schools, colleges or universities of the State, nor to any trial contest for the purpose of testing the strength and capacity of materials and machinery of any kind" and is a distinction between persons of the same class made therein without reasonable relation to health or morals, in permitting more than one such contest within any period of 168 hours, provided same are held at a different place or location? These questions comprehend the substance of appellants' propositions, complaining of the alleged unreasonable class features of the law. These contentions are overruled. We are merely repeating elementary principles in the statement that, when a statute is challenged in a judicial proceeding, the courts will endeavor to uphold it, Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629; and will refrain from denouncing same, unless its invalidity is plainly apparent, Koy v. Schneider, 110 Tex. 369, 218 S. W. 479, 221 S.W. 880. Every reasonable intendment and presumption will be indulged in favor of its validity, unless the contrary appears beyond reasonable doubt. Ashford v. Goodwin, 103 Tex. 491, 131 S.W. 535, Ann.Cas.1913A, 699; Brown v. Galveston, 97 Tex. 1, 75 S.W. 488; Davis v. White et al., Dallas Court of Civil Appeals, 260 S.W. 138; 39 Tex.Jur. §§ 8–11–133. The burden is upon appellants here to demonstrate at least that there is no distinction for classification purposes between the classes of persons participating in this character of activity for commercial purposes, and the exempted classes—that is, schools, colleges, and universities of the State, or exhibitions for the purpose of testing the strength of material and machinery, etc. If there be any reasonable basis for the presumption on the part of the Legislature that a sufficient distinction exists between the classes just referred to, we must uphold the statute, for if an enactment be fairly capable of two constructions, under which it would be valid on the one hand or obnoxious on the other, the former must prevail. Texas Jurisprudence, supra. But we are not required to rest the validity of the law under discussion as against the attack of arbitrary·

and unreasonable classification upon such narrow grounds. We can take common or judicial knowledge of material and substantial distinctions between the exempted persons and those within the strict mandate of this penal law. We know judicially that schools, colleges, or universities of the State are principally educational in purpose, and that games, contests and athletic activities of the latter class are merely incidental to the primary object of the school institution, under uniform regulations, that preclude prolonged and exhaustive physical exercise. We know that athletic school contests, such as football, baseball, tennis, track meets, diving and water sports, gymnasium, etc., are, without exception, carried on during reasonable and definite hours, and, as appellee points out, it would be absurd to assume that such educational institutions would permit or sanction any activity, mental or physical, over a continuing multitude of hours, with the object in view of determining, for financial gain, which pupil would last reach a limit of human endurance. It being common knowledge that such exempted classes are otherwise properly and uniformly regulated against such an exigency, as well as in other respects as to athletic activities, no unreasonable classification exists. Schools and colleges have long been considered more or less affected with a public interest, subject to regulation as a class and to exemption as a class. See Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A. L.R. 1402, upholding a statute exempting school busses from licenses required of private motor carriers; Coggins v. Ely, 23 Ariz. 155, 202 P. 391, sustaining a statute allowing interest on unpaid school warrants, without such allowance on warrants due other state agents or public officials.

Further considering the provisions of article 614b as against the charge of unreasonable discrimination in classes assertedly similar, it is well established that, in the exercise of police power, a Legislature may recognize different degrees of possible abuse, and evil tendencies inherent in different forms of amusement or entertainment, and give effect thereto in classifying the subject, for the purpose of appropriate regulation, without being open to the charge that the statute is arbitrary or unconstitutional. See State v. Loomis, 75 Mont. 88, 242 P. 344, 346, citing Heath & Milligan Manufacturing Co. v. Worst, 207 U.S. 338, 28 S.Ct. 114, 52 L.Ed. 236, among other cases. The Loomis Case (where dance halls were regulated and theatres and playhouses exempted) is so cogent in reasoning to the case at bar that we quote therefrom:

"A very wide latitude is permitted in making selections for classification, and necessarily so, for it is obvious that things may have diverse qualities and belong to the same class, or they may have many characteristics in common and be cast into different classes. Billings v. Illinois, 188 U.S. 97, 23 S.Ct. 272, 47 L.Ed. 400. * * *

"But, although theaters and playhouses are still proper subjects of police regulation, the fact that the state does not now see fit to exert its authority in that respect does not militate against its right to regulate other subjects clearly within the range of its police power. City of Butte v. Paltrovich, 30 Mont. 18, 75 P. 521, 104 Am.St.Rep. 698. The equal protection clause of the Fourteenth Amendment neither requires that state laws shall be perfect nor that the entire field of appropriate legislation shall be covered in a single enactment. Rosenthal v. New York, 226 U.S. 260, 33 S.Ct. 27, 57 L.Ed. 212, Ann.Cas.1914B, 71.

"Laws are not judged by theoretical standards, but by concrete conditions which induce them, and, before the defendant can insist that the amended act be condemned, he must be able to demonstrate that there are not any valid reasons for the application of Sunday observance regulations to dance houses and dance halls which do not apply equally to theaters and playhouses (Missouri, K. & T. R. Co. v. May, 194 U.S. 267, 24 S.Ct. 638, 48 L.Ed. 971; Watson v. Maryland, 218 U.S. 173, 30 S.Ct. 644, 54 L. Ed. 987), and in this he has failed; at least we are not satisfied beyond a reasonable doubt that the classification made by the amended act is arbitrary or unreasonable, and this is the test by which the validity of the act must be determined (Goodell v. Judith Basin County, 70 Mont. 222; 224 P. 1110)."

Cooley's Constitutional Limitations, Vol. 2, page 813, says: "But a state may classify with reference to an evil to be prevented, and if the class discriminated against is, or reasonably might be, considered to define those from whom the evil mainly is to be feared it may properly be picked out." In Patsone v. Commonwealth of Pennsylvania, 232 U.S. 138, 34 S.Ct. 281, 282, 58 L.Ed. 539, Mr. Justice Holmes said: "It is not enough to invalidate the law that others may do the same thing and go unpunished,

if, as a matter of fact, it is found that the danger is characteristic of the class named. * * * The state 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.' "

■ Principles supporting the validity of tax measures, containing classifications and exemptions, may properly be invoked in determining the competency of the statute before us. The test applicable to both species of legislation is substantially similar. Indeed, it is the conclusion of the writer that more latitude is indulged as to regulations within the police power than is applicable to tax laws by reason of article 8, section 2, of our Constitution, which says: "All occupation taxes shall be equal and uniform upon the same class of subjects." In Ex parte Asotsky, 319 Mo. 810, 5 S.W.2d 22, 26, 62 A.L.R. 101, and notes, a cigarette merchant was imprisoned for refusing to pay an occupation tax on cigarettes sold in packages under an ordinance excluding other cigarettes or tobacco products. We quote from this decision: "Petitioner seems to concede that such a classification is proper under the police power for purposes of regulation or suppression, but contend that such classification is improper for purposes of taxation" (citing cases). That court further held: "The facts, which justify classification for regulation, may also justify the classification for revenue purposes." The Missouri case from which we have just quoted held, in effect, that such classification will be sustained if justifiable on any reasonable ground.

Appellee has support for the statement made that there is a present tendency in favor of certain exemptions as to persons and classes, which have been heretofore condemned by the early decisions. State v. Standard Oil Co. et al., Tex.Sup., 107 S.W. 2d 550; Hurt v. Cooper, 110 S.W.2d 896, 897, 900, where the Supreme Court, in answer to certified questions approved the tentative opinion of this court, involving the chain-store tax. Judge Hickman, referring to Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481, 485 had this to say: "That is a definite holding that merchants may be divided into classes and the classes taxed in different amounts and according to different standards; that the considerations upon which such classifications are based are primarily within the discretion of the Legislature; and that courts can interfere only when it is made clearly to appear that there is no reasonable basis for the attempted classification. If there is a reasonable basis or, to express it differently, if it cannot be said that the Legislature acted arbitrarily, the courts will not interfere. Mere differences in methods of conducting businesses have long been recognized in this state as sufficient to support the classification of merchants for the purpose of levying occupation taxes. For instance, our statutes (see article 7047, as amended [Vernon's Ann.Civ.St. art. 7047]) levy occupation taxes on itinerant merchants and peddlars. The difference between their occupations and that of an ordinary merchant is not great, but it would hardly be contended at this time that it is not sufficient to support a separate classification."

And Judge Williams, in the Stephens Case, supra, a leading authority on the subject of occupation taxes, clearly states the rule prevailing in this State on the subject: "The very language of the Constitution of the state implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as, for instance, merchants, may thus be divided into classes, and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage."

■ A digest of the United States Supreme Court decisions, as well as those of last resort from other states, is to the effect that it is the duty of courts to sustain a classification if any reasonable distinction can be found, Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas.1917B, 455; Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699; Boliver Township Board of Finance v. Hawkins, 207 Ind. 171, 191 N.E. 158, 96 A.L.R. 271; even where the difference warranting a classification made by a statute is a debatable question, Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772; that similar statutes have been adopted and sustained in other states is indicative of reasonable classification, Bain Peanut Co. v. Pinson, 282 U.S. 499, 51 S.Ct. 228, 75 L.Ed. 482; and whenever experi-

ence shows that an evil arises from the activities of some specific group, a legislative remedy may be prescribed, applicable to those only who form the evil-producing group, without violating a constitutional prohibition against class legislation, Spicer v. Benefit Ass'n of Ry. Employees, 142 Or. 574, 17 P.2d 1107, 21 P.2d 187, 90 A.L.R. 517.

Appellants cite Jackson v. State, 55 Tex. Cr.R. 557, 117 S.W. 818, and Davis v. White et al., Dallas Court of Civil Appeals, 260 S.W. 138, 140 (writ refused), as particularly analogous to their propositions that an untenable classification and exemption exists relative to article 614b. In the Jackson Case, supra, a statute imposing a license tax on barbers, but exempting students of the State University and other schools of the state, was held invalid, because, being in the nature of a health or sanitary regulation, it should operate upon all alike, when subject to the same conditions. Jackson v. State did not deal with "schools, colleges or universities of the State," but with the students of such schools, exempting such students of the same qualifications and engaged in the same business as the nonstudent. In the case before us, the exemption relates to contests of schools, etc., of the State, and not to any contest which might be conducted or performed by any student of such school, independent of the supervision and regulation of school authorities. In Davis v. White et al., supra, Justice Looney of this court was dealing with a tax statute, requiring an occupation tax on theaters and similar amusements that traveled from place to place, exempting traveling shows giving exhibitions in regular established theaters, which were otherwise subject to an occupation tax under the act; and properly held the enactment invalid as an unwarranted distinction between shows that exhibited in regular licensed theaters and elsewhere. The following language from this case is appropriate: "A classification, however, based alone on whether the show is exhibited here or there, and without any relation to public health, morals, or the general welfare, is arbitrary and entirely aside from public interest or concern." From the terms of the act under examination, it clearly appears that the motivating purpose of the Legislature was directed, not as to the place or location of the endurance contest so regulated, but to the continuity of the contest for commercial purposes, with attendant effect on the public health, peace, morals, and welfare. The Legislature could well presume that such probable detrimental results would not inhere to contests performed by the exempted classes—that is, schools, colleges, and universities, or to exhibitions for the testing of materials or machinery.

As to the exemption of those who may engage in trial tests of materials and machinery, it is also generally known that persons, firms, or corporations usually conducting such activities are regulated strenuously in these times as to hours, wages, and working conditions, as well as in workmen's compensation regulations and benefits—making a clearly distinct and recognized class. The object of such mechanical test is obviously other than directly financial, and lacking the human element of prolonged competitive physical or mental exercise.

Appellants, under their fourth proposition, argue the Legislature has here carved out and placed in the pattern of the law a species of human activities denominated artificial or statutory nuisances, when such are in no sense nuisances in fact. Judge Phillips, in Stockwell v. State, 110 Tex. 550, 221 S.W. 932, 934, 12 A.L.R. 1116, clearly points out the latitude of the lawmakers as to this phase of the police power. In the course of such decision it was said: "Where the Legislature has found and defined, as expressed in its statute, a certain thing to be a public nuisance, only in clear cases would courts be warranted in going behind its findings and determining the contrary. But whether something not defined as a public nuisance by the statute is such under its general terms, is undoubtedly a judicial question." The State, under the law, in its exercise of the police power, has undoubted authority to prescribe as nuisances certain conditions and uses made of property. Any variety of personal, physical, or mental endurance contest, to be continuously conducted over an indefinite number of hours, day and night, where crowds assemble to view public exhibitions for prizes, awards, or admission fees, might naturally, it seems to us, partake of an atmosphere where the public health, peace, morals, or interest is directly concerned. We think the power of the State to legislate, as it did, under the circumstances, is not only probable, but clear.

Appellants' propositions 5 to 13, inclusive, wherein they undertake to condemn

article 614b as too vague, indefinite, and uncertain for enforcement, are the law points that have really troubled us. In *Missouri K. & T. R. Co. v. State*, 100 Tex. 420, 100 S.W. 766, the test for constitutionality is stated: "A penal statute, such as now before us, must be couched in such explicit terms that the party upon whom it is to operate may with reasonable certainty ascertain what the statute requires to be done, and when it must be done; otherwise, there would be no opportunity for a person charged with the duty to protect himself by the performance of it according to the law."

In *Augustine v. State*, 41 Tex. Cr.R. 59, 52 S.W. 77, 96 Am.St.Rep. 765, is similar language, to the effect that, when an act is so indefinitely framed and is of such doubtful construction that it cannot be understood, either from the language in which it is expressed or from any other written law of the State, it is void for uncertainty. "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law." *Connally v. General Const. Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed 322.

Bearing in mind the above-established canons of construction, the wording of sections 1 and 2 of article 614b, given usual and ordinary meaning as defined in any standard dictionary, simply prohibits any person from conducting in public competition for prizes, awards, or admission fees, any personal, physical, or mental endurance contest that continues longer than 24 hours; nor shall there be more than one such contest in any one week in the same place or location, in which any of the same contestants engage. This is sufficiently definite and certain to any one familiar enough with that character of business, to seek to engage in it, to apprise him as to what he can or cannot do. Specified conduct here is made an offense. The statute simply inveighs against all the conduct named, of the character and for the periods therein specified, just as homicide is generally denominated a penal offense, except on the statutory justifiable grounds. As appropriately stated by Judge Phillips, in *State v. T. & P. R. Co.*, 106 Tex. 18, 22, 154 S.W. 1159, 1161, when the validity of a penalty statute as to railroads

was upheld, "Neither do we regard the act inoperative or violative of either the federal or state Constitution because of any vagueness or uncertainty in its terms. A requirement that the water-closets be kept in a reasonably clean and sanitary condition; that they be located within a reasonable and convenient distance from the passenger depots or be kept in connection therewith, and that they be kept well lighted, presents no difficulty to the understanding, and should present none in its observance. Its terms are suitable to the subject-matter of the act; and, having regard for the difference in conditions at the stations upon railway lines where it is made operative, the use of more specific language would very probably have provided only an arbitrary and impracticable rule."

But appellants point out that one conducting such a business, desirous of complying with the law, is at a loss to know what is meant by the different places or locations where endurance contests might continue within its terms. ·The law is clear, we think, as to the wording of the statute "at the same place or location," and if an operator seeks to undertake continuous performances by a statutory compliance as to other places or locations, a fact question would arise in the event of criminal proceedings, similar to the issue of self-defense in a prosecution for murder. The following passage from *State v. I. & G. N. R. Co.*, 107 Tex. 349, 352, 179 S.W. 867, 868, can be here interpolated, where, in a penal statute against railroads, the provision of "light repairs" was exempted and the statute upheld. Referring to the exception of "light repairs," Judge Yantis said: "It is one of the defenses to a prosecution under the act which the act itself provides for the benefit of those engaged in the construction and repair of railroad equipment. As used in this connection, we think the meaning of that portion of .the act of the Legislature which creates the offense is not rendered as uncertain as it would be if the term 'light repairs' constituted an ingredient of the offense itself."

Appellants argue that sections 3 and 4 of the act, within their plain terms, forbid no specific or definite conduct, and could refer to all acts of physical or mental endeavor, because neither public competition nor competing for prizes, awards, or admission fees are expressly comprehended. We are at liberty ·to view the act as a·

whole, in giving effect to these particular sections. Bearing in mind the preceding sections, followed by section 5, providing, "or any person who shall enter any contest that violates any provision of this Act," it is obvious that sections 3 and 4 are referable to persons engaging in public competition for prizes, awards, etc., taking into consideration, as is proper, the context and subject-matter relative to which such language is employed. Art. 8 P.C., supra; McLeod v. State, 77 Tex. Cr.R. 365, 180 S.W. 117, 118, L.R.A.1916B, 1124.

It is further contended that certain words and phrases in the act are too vague and indefinite for understanding and enforcement as criminal charges. Where the particular words assailed, taken in connection with the context of the act, are commonly understood, their use does not render a statute invalid; the Legislature not being required to define words in common or daily use. A statute is sufficiently certain if the words and phrases employed have a technical or other specific meaning, well enough known to enable those within their reach to correctly apply them. Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402. "Implements of husbandry" as an exempted element of a penal statute has been held sufficiently definite. Reaves v. State, 121 Tex. Cr.R. 488, 50 S.W.2d 286. " 'Shortest practicable route' is not an expression too vague to be understood. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding," Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167, Hughes, Chief Justice; the term "articles of standard quality," "in fair and open competition," and "any commodity" have been considered not so ambiguous as to be void for uncertainty, Joseph Triner Corp. v. McNeil, 363 Ill. 559, 2 N.E.2d 929, 939, 104 A.L.R. 1436.

While no penal law should be sustained unless what it commands is so clearly expressed as that any ordinary person can understand in advance his duties thereunder, and the departure therefrom which the law attempts to make criminal, Tozer v. United States, C.C., 52 F. 917, we think the Legislature here has informed the citizen with reasonable precision what conduct it intended to prohibit by this statute, and is sufficiently explicit that all persons subject to its penalties may know what acts it is their duty to avoid. United States v. Brewer, 139 U.S. 278, 11 S.Ct. 538, 35 L. Ed. 190; 8 R.C.L. 58. Many of the cases relied upon by appellants involve construction of chapter 1, art. 783 et seq., title 13 of the Penal Code, as amended, Vernon's Ann.P.C. art. 783 et seq., relating to highways and vehicles, and are distinguishable. The vice in those cases consisted in leaving to the court or jury the responsibility of creating their own standard as to the meaning of the particular words or phrases condemned. The controlling features of this article, we think, provide a sufficiently ascertainable standard of guilt.

The more or less laudable interest evinced, by individuals and promoters, to determine the present-day capacity for human endurance, as compared to ancient Grecian standards—not for patriotic, but for commercial reasons, however—is of recent but wide development, taking manifold forms. More than 20 states have enacted legislation for the relief of the overworked contestant for Marathon honors within the past three years, though since 1903 Pennsylvania has limited athletic exhibitions to 12 hours per day. Colorado and Louisiana have laws on the subject quite similar to article 614b. Judge Looney of this Court (Sportatorium, Inc., v. State, 104 S.W.2d 912) cites cases of other jurisdictions where laws of like import have been upheld; and, so far as we have been able to determine, the legislation of the 25 other states relative to the Marathon, walkathon, dancathon, skatathon, speedathon, or by whatever name an endurance contest in public competition for commercial reasons may be called, are still valid and subsisting laws.

Concluding our discussion of these several propositions of appellants, we hold the language of the article in question is sufficiently definite and certain as that a person affected thereby can reasonably be informed when he is violating or about to violate the same.

The action of the trial court in granting the injunction herein is affirmed.

Affirmed.

BOND, Chief Justice (dissenting).

My views on the question decided in the majority opinion are expressed with cited authorities in the dissenting opinion of Sportatorium, Inc., v. State, Tex.Civ. App., 104 S.W.2d 912, 916. I find further

support as to the uncertainty of the statute in the various holdings of our courts in attempting to lay down a rule for the enforcement of the law. Obviously, the Legislature attempted to regulate "personal, physical or mental contests" by prohibiting such contests to run continuously for a period of 24 hours, and not more than one such contest at the same place or location within any period of 168 hours. The policy of enacting this law, and with what the Legislatures of other states have done to regulate or prohibit such amusements, courts are not concerned.

Bearing upon the uncertainty of the provisions, attention is directed to the case of Wolfe v. State, 127 Tex.Cr.R. 213, 75 S.W.2d 677, in which the defendant was charged with the violation of this statute. "The state's proof showed that the schedule prepared by the promoter of the contest provided for forty-five minutes of walking or dancing and fifteen minutes of rest for each contestant. This schedule was adhered to during the entire time the contest was in progress; that is, the contestants rested fifteen minutes out of every hour. Thus during the twenty-four hour period each contestant rested six hours, all resting at the same time. No new contestants entered after the contest opened." The Court of Criminal Appeals of Texas, after having construed the word "continuous," expressed the opinion that the proof fails to support the allegation "that the contest continued longer than twenty-four hours in one continuous competitive period of endurance." Contrary to this holding, the majority of this court, in the case of Sportatorium v. State, supra, with the identical state of facts, said: "The contest was * * * a continuous one and by the same participants, except those eliminated, and was broken only at short intervals, which * * * did not break the continuity of the contest." In the dissenting opinion, I expressed the view that such facts did not constitute a continuous contest. Then, again, in the case of Braden v. State, 108 S.W.2d 314, the Waco Court of Civil Appeals, with similar facts before it, held that: "The brief periods of rest allowed between the periods of work were so short that they were entirely out of proportion to the normal period of rest usually allowed for the recreation of the human body. There was therefore no substantial cessation of the contest."

So here we have one member of this court and the Court of Criminal Appeals of Texas construing this statute to mean one thing, and two judges of this court and the Waco Court of Civil Appeals construing the statute to mean another, on identically the same state of facts. Manifestly, the expression of the Galveston Court of Civil Appeals, in the case of Graham v. Hines, 240 S.W. 1015, 1021, writ of error refused, is pertinent to this situation, quoting: "The fact that the learned judges of the two appellate courts differ so widely as to what act is made a crime under this statute, it seems to us, sought to protect the citizen from the hazard of having to decide at his peril what is the act or omission on his part which is penalized."

The Penal Code of this State provides that the design of enacting it is to define in plain language every offense, P.C.1925, art. 1; and that no person shall be punished for an offense, if "the penal law is so indefinitely framed or of such doubtful construction that it can not be understood." P.C. arts. 6, 8. The Constitution also guarantees to every citizen the right to know the nature and character of the accusation against him. Const. art. 1, § 10. In my opinion, the statute here under consideration, which has been construed by the Court of Criminal Appeals of this State as meaning one thing, and by the majority of this court and the Waco Court of Civil Appeals as meaning another, is so indefinite and uncertain as to be obnoxious to the Constitution and the statutes of the state. There is no fixed rule stated when a citizen shall know when he is within or without the law. The statute is penal in its nature. Every act made penal invades the constitutional guarantee of liability and the use of property.

Furthermore, there is no rule more fixed than the one requiring that a penal statute, invading and inhibiting the personal conduct and prerogative of citizens in their relations and in the use of their property, must operate uniformly and equally upon all alike. Section 6 of the statute under consideration, article 614b, P.C., provides: "The provisions of this Act shall not apply to any athletic contest of schools, colleges or universities of the State, nor to any trial contest for the purpose of testing the strength and capacity of materials and machinery of any kind."

494

This, I think, makes the statute obnoxious to the constitutional provision of equal rights, immunities, and privileges to all citizens.

In the case of Jackson v. State, 55 Tex. Cr.R. 557, 117 S.W. 818, the Court of Criminal Appeals of Texas struck down an act of the Legislature regulating the practice of barbering, as being unconstitutional, in that it discriminated and was not equal and uniform. The law there under consideration was almost analogous to the law here involved. It provided that: "Nothing in this act shall apply to the students of the State University or other schools of the state who are or may be making their way through school by serving as barber, or those serving as barber in any of the eleemosynary institutions of the state; nor shall the provisions of this section apply to persons serving as barber in towns of 1000 inhabitants or less." Acts 1907, c. 141, § 8. The court, in considering that provision, said: "Whatever may have been the thought in the legislative mind as to why these classes or persons should be exempted, in violation of the provisions of the Constitution, we are of opinion that such intent cannot operate, and we are of opinion that the favored and exempted classes mentioned, especially with reference to the barbers in schools and eleemosynary institutions, cannot be exempt, and this law remain constitutional. Sanitary regulations should operate upon all alike, when subject to same conditions"—thus holding the law to be unconstitutional.

In the case of Ex parte Baker, 127 Tex. Cr.R. 589, 78 S.W.2d 610, 613, the Court of Criminal Appeals had before it a city ordinance which discriminated between the products of bakeries located within the boundaries of the city and the products of those located without the boundaries of the city, with reference to the sale of their products within the city. In holding the ordinance unconstitutional, the court said: "An ordinance which attempts to distinguish between persons engaged in the same or like business merely on the basis of their residence or the location of their business houses is in contravention of the constitutional provisions hereinabove quoted. We think such ordinance whether it purports to be an exercise of the police power or the power to tax is discriminatory in that it is not based upon any reasonable classifications. A city or town may under its police power make and enforce within its limits any traffic, sanitary, or health regulations which are not in contravention of the organic law of the land, but it cannot, under the guise of its police power, enact any ordinance which would deny any man or set of men equal rights or abridge their privileges or immunities, or deprive them of their property without due process of law."

It is the peculiar province of the Court of Criminal Appeals of this State to construe penal statutes, and its opinions should have controlling force on the action of the civil courts of the State in construing such laws, and for that reason the expressions of the Court of Criminal Appeals on analogous statutes are quoted, and, I think, bear directly on the issue here involved.

Conceding that the Legislature, in enacting this statute, was prompted by a worthy motive and sincere belief that the type of amusement prohibited constituted an evil, nevertheless, the Legislature was circumscribed by constitutional limitations which denied to it the power to declare by statute an act done by one of its citizens is illegal, and that the same act done by another of its citizens, or by another group of its citizens of the same class in relation to the act, is legal.

If "personal, physical or mental endurance contests, conducted in public competition for prizes, awards or admission fees and continuing longer than twenty-four hours" constitute an evil and a nuisance, a proper subject of police regulation by the State, the constitutional reservation does not permit the Legislature to declare that any such act done or committed at one place or location is legal and the operators not amenable to the law; and that the same identical act done at some other place or location is illegal, and the operators subject to the penalty subscribed. If such a law stands as a proper police regulation, then there is nothing as I can see to prohibit any person or group of persons from opening up and operating a school, college, or university, at some place or location, it matters not where, and then, under the auspices of such an improvised institution, conduct a personal, physical, or mental endurance contest, and thus come under the exemption of the statute; while, without such school, the same party conducting such contest would come under its condemnation.

If the evil sought to be regulated is in fact a nuisance and subject to be abated and the operators thereof guilty of a crime, how can it be said that it would lose its evil characteristics if conducted by some school, college, or university of the State, and then, too, retain the evils, if conducted in the State by educational institutions outside of the State, or by individuals within the State? I do not believe it is a proper classification to allow any school within this State to do an act which is declared a nuisance by expressed statutory provisions, and to deny the same thing to schools outside of Texas, or to individuals in Texas not connected with schools, colleges, or universities. Clearly, if such endurance contests are permitted by schools, colleges, or universities of this State and is denied to schools, colleges, and universities out of this State, and to individuals or groups of individuals in other places or localities, the law so declaring deprives the latter class of equal immunities and privileges guaranteed under both the State and Federal Constitutions.

I do not deem it necessary to enter into a further discussion of the question, but respectfully indicate my inability to agree with my associates.

### On Rehearing.

YOUNG, Justice.

We have concluded that appellants' motion for rehearing should be overruled. In the alternative, appellants pray that, because the constitutionality of a statute is here involved, and because of the importance of the question and the divergence of opinions among the appellate courts on the issues under discussion, the opinion of this court not being unanimous, this cause be certified to the Supreme Court. We are disinclined to burden the Supreme Court with law questions, under article 1851, R.S., when the regular channel is available to litigants for a review by that court. The Supreme Court can take jurisdiction on writ of error, if it deems such action at all advisable. It will certainly do so, if there be such a contrariety of opinions among the appellate courts as is contended by appellants. Thus, a note of finality would be given to this and similar litigation and the question of the validity of the statute set at rest. The motion to certify is also overruled.

Overruled.

BOND, C. J., is in accord with the conclusion of the majority herein not to certify to the Supreme Court, but dissents to their action in overruling the motion for rehearing.