120 P.2d 428

**STATE ex rel. ADAMS, Acting Dist. Atty., v. CROWDER.**

**No. 4676.**

Supreme Court of New Mexico.

Dec. 4, 1941.

Quincy D. Adams, Acting Dist. Atty., and Scott H. Mabry, Asst. Dist. Atty., both of Albuquerque, for plaintiff in error.

Dailey & Rogers and Jethro S. Vaught, Jr., all of Albuquerque, for defendant in error.

ZINN, Justice.

Plaintiff (plaintiff in error here), Acting District Attorney of the Second Judicial District, filed a complaint in the District Court against the defendant (defendant in error here) alleging that contrary to the provisions of L.1941, Ch. 49, the defendant, during a period of one hundred and sixty-eight hours, had conducted more than one personal, mental or physical endurance contest in public competition for pay, prizes, awards or admission fees in the same place or location and in which the same contestants engaged. The complaint prayed for an order to show cause why the defendant should not be enjoined pendente lite from violating the provisions of said act, as well as for a permanent injunction upon final hearing of the cause.

An order to show cause was entered and the case came on for hearing before the court. At the close of the defendant's case, the court declined to enter the temporary injunction, holding that defendant was not conducting either a physical or mental endurance contest within the meaning of L.1941, Ch. 49, Sec. 2. The court entered a final decree in the cause dismissing the complaint. From this final decree, plaintiff sued out this writ of error.

The court made findings of fact and conclusions of law and refused to make the findings requested by plaintiff. The court found that the defendant did not conduct a personal, physical, or mental endurance contest. The court also found that the activity engaged in by the participants was not tiring and was fundamentally no different than the usual daily activity of the ordinary man or woman engaged in making a livelihood.

Plaintiff in error contends that the findings of the court are not supported by the evidence.

The record shows that the defendant conducted an exhibition, show or contest called a "Speed Derby." At this contest there was a floor judge and a master of ceremonies. All participants agreed to abide by a set of rules. Under the rules all contestants must participate forty-five minutes of every hour on the dancing floor, that is, they were to keep dancing or moving, after which they retire to their respective training quarters for a period of fifteen minutes, during which time they are under the supervision of the trainers who look after them during the relaxation period. This routine continues twelve hours per day. At the completion of the fifteen minutes they are required to return to the dancing floor within four minutes. Failure to do so constitutes disqualification. While on the dancing floor the contestants are under jurisdiction of the floor judge on duty at the time, and if a contestant should leave the floor without the per-

mission of the floor judge it is a cause for disqualification. If a contestant should fall to the floor during any forty-five minute period "knees touching the floor", sitting down on the floor, or falling face forward, constitutes disqualification. The cause of such falling is not stated in the rules. The rules of the contest were subject to change at any time.

The cash awards to the winners of the contest total up to $1,250. The prize money is derived from the gross gate receipts of the Speed Derby and is to be distributed to the last five remaining couples on the floor, the last couple or the winner, receiving $500; second place team, $300; third place team, $200; and fourth place team, $150; and fifth place team, $100.

During the forty-five minute period, an isolated couple would stage a dance act, have a skit, and at other times the contestants would sing and keep moving with the music. About fifteen minutes was consumed by all of the participants in walking or dancing around the floor in each forty-five minute period. The production was held twelve hours out of each twenty-four hour period. In addition to the fifteen minute rest periods, additional periods were allowed wherein shower baths could be taken and during which also participants could eat. The eating periods were from twenty-five to thirty minutes.

When there was entertainment during the forty-five minute period, there would be neither dancing nor walking, and during the evening sessions, there were several entertainment acts during the forty-five minute periods.

In response to a question by the court one witness for the plaintiff testified that in her estimation half of the time in each forty-five minute period was consumed by entertainment.

The couples who participated varied in age, from sixteen up to the early thirties. The couples came out on the floor when the floor judge blew his whistle. The contestants then paired up and went around the floor at a rather terrific pace for about five minutes. Then the participants stood near a platform and individual contestants gave dancing exhibitions. There is no evidence that any contestant dropped out of the contest because of physical exhaustion.

Dr. Wallace Nissen, a physician and surgeon engaged in general practice, testified that he examined certain of the contestants, about six in number, three local amateur participants and three professional or out-of-state participants. In his examination he used the stethoscope, blood pressure instrument and watch. He examined for heart action, blood pressure, pulse and respiration, and that he found them to be well within normal. He checked them again after a forty-five minute period of walking and found very little variation between the tests before and after that period. A hypothetical question was asked this witness. He was asked whether from a medical standpoint the show, as conducted, was an endurance contest. Dr. Nissen replied in the negative. He also testified that

participation in such an exhibition would not result in exhaustion. The record also shows that to the date of the hearing no one had quit the show by reason of exhaustion.

Some of the participants testified that they had gained weight and felt the same as when they started and that the production was not wearing them out, neither were they tired nor nervous. One professional participant testified that in her opinion it isn't possible to be exhausted in a twelve hour show. This witness described the difference between the endurance contest known as the "Walkathon" and the defendant's production. It seems that the "Walkathon" goes for twenty-four hours with fifteen minute rest periods. This witness testified that she had carried her partner while he was asleep for four hours while walking on the floor in the "Walkathon" and that participants in the "Walkathon" quit the show from exhaustion or nervousness.

In addition to methods provided by the rules for disqualifying or eliminating contestants, they were also eliminated in a "treadmill". This is described as a slow walk set to waltz time music. During this "treadmill" dropping of hands, walking off the floor, breaking away from partners, or stopping disqualify the participant.

That the defendant was conducting more than one contest within a period of one hundred sixty-eight hours in public competition for prizes at the same place or location and in which the same contestants engage is not questioned.

■ Were these contests physical or mental endurance contests within the meaning of L.1941, Ch. 49? This we doubt.

Physical endurance is hard to define. From a reading of the Texas cases cited by the plaintiff, to-wit: Braden v. State, Tex.Civ.App., 108 S.W.2d 314, Sportatorium, Inc., v. State, Tex.Civ.App., 104 S.W. 2d 912, and Sportatorium, Inc., v. State, Tex.Civ.App., 115 S.W.2d 483, which cases construed the Texas statute, Vernon's Annotated Penal Code of Texas, Article 614b, and which statute is similar to Ch. 49, it seems that the physical endurance contests discussed in the Texas cases are those wherein the participants continued in the contest until they were eliminated by physical exhaustion, somewhat like the "Walkathon" described by one of the witnesses in this case. In other words the contests discussed in the Texas cases are those where the contestants were eliminated because their capability of physically lasting in the contest had come to an end.

The word "Endurance" is not ordinarily easy of definition as it is applied to a contest.

From Webster's International Dictionary, Second Edition, we find the following:

"Endurance.

"1. State or capability of lasting; continuance.

"2. Act or instance of bearing or suffering; a continuing or the power of con-

tinuing under pain, hardship, or distress without being overcome; sufferance; as, beyond endurance.

"4. Aeronautics. The maximum length of time an aircraft can remain in the air at a given speed and altitude."

■■ We believe the Legislature had in mind the prohibition of contests wherein the human machine was put to a test to determine the maximum length of time it could engage in a contest without being eliminated because of physical or mental inability to carry on. The accomplishment of every goal of physical or mental effort implies the exercise to a greater or lesser degree of the quality of endurance. We take it for granted that the evil sought to be remedied was a public exhibition of endurance to the point of undue suffering or cruelty, detrimental to the physical or mental well being of the participants in the contest and/or to the emotions of the spectators.

■ Any doubt must be resolved against the complainant and in favor of the defendant. This rule was applied by the Texas courts in a case construing their statute from which Ch. 49 was taken.

"No act or omission is a crime, unless made so by statute, and, to warrant a conviction, the act or omission must be plainly and unmistakably shown within the definition of the statute and within both the letter and the spirit of the law, and, if there is any fair doubt that the statute has been violated, that doubt must be resolved in favor of the accused. There can be no con-structive offense, and where the statute expressly limits or does not prohibit the doing of a certain act, only those brought by the facts within the statute and such definition are amenable." Sportatorium, Inc., v. State, Tex.Civ.App., 104 S.W.2d 912, 919.

This rule is applicable where an injunction is sought to restrain a so-called "Walkathon" contest.

"The act in question can be classified as penal in nature, the penalty provided for its violation as a criminal law being a fine and jail sentence, and cumulative thereof, through suppression by civil proceedings as a common nuisance. The injunction features of the law are therefore more in the nature of additional punishment for its infraction than the establishment of a rule of civil conduct, as illustrated by the principles announced in road law cases. West Texas Coaches v. Madi, Tex.Com.App., 26 S.W.2d 199. Hence, the rule of strict construction should apply in testing the legal sufficiency of the law under consideration as a criminal statute. State v. Duke, 104 Tex. 355–370, 137 S.W. 654, 138 S.W. 385; Green v. State, Tex.Civ.App., 49 S.W.2d 519." Sportatorium, Inc., v. State, Tex. Civ.App., 115 S.W.2d 483, 487.

All doubts, if any, must be construed in favor of the defendant.

■ The endurance contest which we believe the Legislature had in mind when it enacted Ch. 49 was a continuous and everlasting chess game, bridge game, foot race, bicycle race or "Walkathon", or oth-

er contest or game of like nature, wherein a contestant or player is eliminated, not because of his opponents superior skill, but because the contestant or player is so physically or mentally weary that he has not the physical or mental stamina to continue in the game. Such contests would come within the ban of the statute. Such contests are to test the physical or mental capacity of the contestants to continue until physically or mentally overcome and are therefore prohibited.

The contestants in the instant case, it seems to us, and so it probably seemed to the trial court, were eliminated because of inattention. That is more in the nature of a game or like the prize waltz contests, of which the writer of this opinion takes judicial notice, having participated in some during the days of his youth, where contestants are eliminated because of a misstep.

The record is devoid of any evidence showing that any of the contestants were eliminated because of being unable to continue because of mental or physical inability to carry on. The element lacking in the contests conducted by the defendant to come within the ban of the statute is apparent.

The evidence supports the trial court's findings of fact. Under the substantial evidence rule, such findings will not be disturbed here.

It becomes unnecessary to determine the validity or invalidity of Ch. 49, a question raised by the defendant.

Finding no error, the judgment will be sustained and injunction denied.

It is so ordered.

BRICE, C. J., and BICKLEY, J., concur.

SADLER and MABRY, JJ., did not participate.