## ROSENTHAL *v.* PEOPLE OF THE STATE OF NEW YORK.

### ERROR TO THE COUNTY COURT OF MONROE COUNTY, IN THE STATE OF NEW YORK.

No. 28. Argued November 5, 1912.—Decided December 2, 1912.

The prohibition of the Fourteenth Amendment against abridgment of privileges or immunities of a citizen of the United States relates only to such privileges and immunities as pertain to citizenship of the United States as distinguished from state citizenship. *Slaughter House Cases,* 16 Wall. 36.

A State may, in the exercise of its police power, classify separately particular kinds of personal property which the legislature considers more susceptible of theft than other property.

It is not unreasonable or arbitrary to require dealers in junk to make diligent inquiry to ascertain that persons selling to them wire cable, iron &c. belonging to railroads or telegraph companies have a legal right to do so.

Dealers who provide an important and separate market for a particular class of stolen goods may be put in a class by themselves, and so as to dealers in junk.

One not included in a class established by a police statute or who is not injuriously affected by the classification cannot be heard to attack the statute on the ground that the classification denies equal protection of the law.

A State is not required to go as far as it may in establishing a police regulation; the entire field of proper legislation need not be covered in a single act.

Section 550 of the Penal Code of New York as amended in 1903, prohibiting dealers in junk from buying wire, copper, &c., used by, or belonging to a railroad, telephone or telegraph company without first ascertaining by diligent inquiry that the person selling had a legal right to do so, is not unconstitutional under the Fourteenth Amendment either as depriving junk dealers of their property without due process of law or denying them equal protection of the law by an arbitrary classification of junk dealers or of the property specified.

Whether a state law is unconstitutional as *ex post facto* by reason of the construction given it by the state court not considered in this case because no such point was raised in the court below or covered by assignments of error in this court.

197 N. Y. 394, affirmed.

THE facts, which involve the constitutionality of a statute of New York relating to dealers in junk, are stated in the opinion.

*Mr. Percival D. Oviatt* for plaintiff in error:

Chapter 326 of the Laws of 1903, is unconstitutional even as interpreted by the New York Court of Appeals.

The laws relating to criminally receiving stolen property as they existed prior to 1903, were adequate to pro-

tect against the evils involved. Chapter 308, Laws of 1903, compels every junk dealer to obtain a license. See *People* v. *Wilson*, 151 N. Y. 403; *People* v. *Dowling*, 84 N. Y. 478, 485.

See also § 290, subd. 6 of the Penal Code providing that no junk dealer shall receive or purchase anything from a child under sixteen years of age; Laws of 1907, Chapter 755, New Charter of Rochester. The statute cannot be constitutional as to cities of the first class, and unconstitutional as to all other places.

There is no justification for the Court of Appeals to say that the materials are usually of such shape and form as to indicate use or ownership.

The statute applies only to dealers in metals, etc., and is class legislation based upon illogical and arbitrary distinctions. *Re Jacobs*, 98 N. Y. 106; *People* v. *Marx*, 99 N. Y. 377; *Madden* v. *Dycker*, 72 App. Div. 308; *Schnaier* v. *Navarre Hotel & Importation Co.*, 182 N. Y. 83; *Wright* v. *Hart*, 182 N. Y. 330; *Buffalo* v. *Linsman*, 113 App. Div. 584; *Fisher Co.* v. *Woods*, 187 N. Y. 90; *People* v. *Williams*, 189 N. Y. 131; *Tyroler* v. *Warden*, 157 N. Y. 116; *Lochner* v. *New York*, 198 U. S. 45, 56; *Cotting* v. *Godard*, 183 U. S. 79, 107; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 294; *Gulf, C. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150; *Josma* v. *Western Steel Car Co.*, 249 Illinois, 508; *Chicago* v. *Lowenthal*, 242 Illinois, 404.

The case at bar involves any dealer in metals, not only junk dealers. *Fisher Co.* v. *Woods*, 187 N. Y. 90; *People* v. *Hawkins*, 157 N. Y. 1; *Phillips* v. *Raynes*, 136 App. Div. 417; *People* v. *Beattie*, 96 App. Div. 383.

The statute is solicitous concerning the property of only railroad, telephone, gas and electric companies, and is class legislation based upon illogical and arbitrary dictinctions.

This legislation is as offensive as that which was de-

clared unconstitutional in *Shaver* v. *Pennsylvania Co.,*
71 Fed. Rep. 931; *Wright* v. *Hart, supra; Lochner* v. *New
York,* 198 U. S. 45, 56.

The motive for passing the statute in the case at bar
was not to protect all persons similarly situated, owning
the property described, but it was to protect only the
specific corporations named without regard to the wel-
fare of the other owners of the same character of property.
*Cotting* v. *Godard,* 183 U. S. 79, 109; *Connolly* v. *Union
Sewer Pipe Co.,* 184 U. S. 540; *Gulf, C. & S. F. R. Co.* v.
*Ellis,* 165 U. S. 150; *People* v. *Hawkins,* 157 N. Y. 1.

The incident of who owned the property can have no
bearing upon the guilt or innocence of the purchaser.
If the property is of such a nature that it is peculiarly sus-·
ceptible to theft, it is the nature of the property and not the
owner of it which constitutes the fundamental and logical
distinction. *Phillips* v. *Raynes,* 136 App. Div. 417, 425;
*People* v. *Marcus,* 110 Am. Dec. 255; *Appel* v. *Zimmerman,*
102 Am. Dec. 103; *People* v. *Beattie,* 96· Am. Dec. 383,
392; *In re Van Horne,* 70 Atl. Rep. 986.

The statute required the plaintiff in error to determine
a legal question which was not a question as to whether
the property had been stolen, but the question as to the
legal right of the seller to sell it. *Lawton* v. *Steel,* 119
N. Y. 226; *Cotting* v. *Godard,* 183 U. S. 79; *United States* v.
*Reese,* 92 U. S. 214; *Gulf, Colorado & Santa Fe Railway Co.*
v. *Ellis,* 165 U. S. 150; *Rodgers* v. *Coler,* 166 N. Y. 1;
*Board of Commissioners* v. *Merchant,* 103 N. Y. 143, 148;
*People* v. *Gillson,* 109 N. Y. 389, 400.

In the case at bar, the dealer's power to purchase is
restricted by the absurd condition of making him ascer-
tain a legal right. Such legislation is not necessary be-
cause if legislation of this character were necessary for
the common welfare it should apply to all persons about
to purchase such property, and to all owners of such prop-
erty without restriction; it should compel an inquiry, not

as to a legal right of the seller to sell, but as to whether or not the property had, in fact, been the subject of a larceny.

The construction placed upon this statute by the Court of Appeals of the State of New York is clearly erroneous. In this situation this court may interpret the statute for itself. Under a proper interpretation the statute is unconstitutional for other reasons than those already argued.

In a criminal statute, the elements constituting the offense must be so clearly stated and defined as to reasonably admit of but one construction. Otherwise, there would be lack of uniformity in its enforcement. The dividing line between what is lawful and unlawful cannot be left to conjecture. *United States* v. *Reese*, 92 U. S. 214; *Lochner* v. *New York*, 198 U. S. 45; *Yick Wo* v. *Hopkins*, 118 U. S. 355; *Baldwin* v. *Frank*, 120 U. S. 680; *Burgess* v. *Seligman*, 107 U. S. 21.

The constitutional rights of the plaintiff in error either were or were not violated at the time he was sentenced upon his plea of guilty, and when his motion in arrest of judgment was denied. At that time there was no state decision interpreting this statute. *Douglas* v. *Pike Co.*, 101 U. S. 679; *United States* v. *Reese*, 92 U. S. 215; *State Bank* v. *Knoop*, 16 How. 369; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews*, 174 U. S. 96. See also *Louisville Trust Co.* v. *City of Cincinnati*, 76 Fed. Rep. 296; *Loeb* v. *Columbia County*, 91 Fed. Rep. 37.

*Mr. Freeman F. Zimmerman* for defendant in error.

Mr. Justice Pitney delivered the opinion of the court.

The plaintiff in error pleaded guilty to an indictment charging him with "the crime of criminally receiving stolen property," in that he, being a dealer in and collector of junk, metals and second-hand materials, did feloniously

buy and receive, from persons named, certain copper wire, "the same then and there consisting of copper wire used by and belonging to a telephone company, to wit, used by and being the goods, chattels and personal property of the Bell Telephone Company, of Buffalo, . . . then lately stolen, taken and carried away from the possession of the said Bell Telephone Company, . . . without ascertaining by diligent inquiry that the said persons so selling and delivering the same had a legal right to do so."

The indictment was founded upon Chap. 326 of the Laws of 1903 of the State of New York, amending § 550 of the Penal Code. The section as amended reads as follows:

"SEC. 550. Criminally receiving property.—A person, who buys or receives any stolen property, or any property which has been wrongfully appropriated in such a manner as to constitute larceny according to this chapter, knowing the same to have been stolen or so dealt with, or who corruptly, for any money, property, reward, or promise or agreement for the same, conceals, withholds, or aids in concealing or withholding any property, knowing the same to have been stolen, or appropriated wrongfully in such a manner as to constitute larceny under the provisions of this chapter, if such misappropriation has been committed within the state, whether such property were stolen or misappropriated within or without the state, [*or who being a dealer in or collector of junk, metals or secondhand materials, or the agent, employé, or representative of such dealer or collector, buys or receives any wire, cable, copper, lead, solder, iron or brass used by or belonging to a railroad, telephone, telegraph, gas or electric light company without ascertaining by diligent inquiry, that the person selling or delivering the same has a legal right to do so,*] is guilty of criminally receiving such property, and is punishable, by imprisonment in a state prison for not more than

five years, or in a county jail for not more than six months, or by a fine of not more than two hundred and fifty dollars, or by both such fine and imprisonment."

The words inclosed in brackets were added by the amendment of 1903, which made no other change in the section. The section as amended was reënacted in the Penal Code as § 1308.

Having pleaded guilty, the plaintiff in error moved in arrest of judgment, upon the ground of the unconstitutionality of the amendment of 1903, and this motion having been denied, sentence of fine and imprisonment was imposed, whereupon he took an appeal to the Appellate Division, and from an adverse ruling in that court he appealed to the Court of Appeals, which court sustained the statute against the constitutional objections and affirmed the judgment of conviction. 197 N. Y. 394.

The record having been remitted to the county court, the present writ of error was taken. The errors relied upon are that the courts of the State of New York erred, because they ought to have decided that the amendment of 1903 to § 550 of the Penal Code was in conflict with the Fourteenth Amendment, in that (a) it abridged the privileges and immunities of the plaintiff in error; (b) deprived him of his liberty and property without due process of law, and (c) denied to him the equal protection of the laws.

No serious argument was made to support the contention that the act in any way abridged the privileges or immunities of the plaintiff in error as a citizen of the United States. This part of the prohibition of the Fourteenth Amendment refers only to such privileges and immunities as pertain to citizenship of the United States, as distinguished from state citizenship. *Slaughter House Cases*, 16 Wall. 36, 74, 80. We are unable to see that the statute under consideration, or its enforcement in the case at hand, even if the act be fairly open to any or all of the criticisms that are made upon it, abridges in the

least any privilege or immunity that arises out of the national citizenship of the plaintiff in error.

The argument is thus narrowed to a consideration of the statute in the light of the "due process of law" and "equal protection" clauses.

The New York Court of Appeals in the present case construed the amendment of 1903 as applying only to stolen property, and as putting upon the dealer in junk, metal or second-hand materials, not the burden of ascertaining at his peril that the person selling or delivering the wire or other property specified, has a legal right to do so, but only the duty of making diligent inquiry for the purpose of ascertaining whether the person selling or delivering it has such legal right.

Counsel for the plaintiff in error argues, first, that the act in question is unconstitutional even as thus interpreted; and this on the grounds that the previous laws relating to criminally receiving stolen property, were adequate to protect against the evils involved and that the act of 1903 is unreasonable and oppressive and an undue interference with the liberty of contract; that since the act applies only to dealers in metals, etc., it is class legislation, based upon arbitrary distinctions; and that the statute protects the property only of railroad, telephone, gas and electric companies, and for this reason likewise is based upon arbitrary distinctions.

In support of this argument, counsel points out that, without the amendment of 1903, the Penal Code provides that anyone who buys or receives property, knowing it to be stolen, is guilty of a felony; that anyone who conceals or withholds or aids in the concealment or withholding of such property is guilty of a felony; that the decisions of the courts of New York hold that actual knowledge of the fact that the property is stolen is unnecessary, and that anything in the circumstances that would put an honest or prudent man upon inquiry is sufficient to war-

rant a conviction. *People v. Dowling*, 84 N. Y. 478, 485;
*People v. Wilson*, 151 N. Y. 403. It is also pointed out
that chapter 308 of the Laws of 1903 compels every junk
dealer (except in cities of the first class), to obtain a li-
cense, provides that when such a dealer purchases any
pig iron, pig metal, copper wire, or brass car journals, he
shall cause a statement to be subscribed by the seller as
to when, where, and from whom he obtained the prop-
erty, which statement must be filed with the chief of
police; and that when a junk dealer purchases the prop-
erty described, he must keep such purchase absolutely
separate and distinct, without change or mutilation, for
a period of five days after the purchase, and must tag it
with a tag bearing the particulars of the purchase. And
that all cities of the first class have dealt with the subject-
matter through the means of local ordinances at least as
comprehensive as the statute just mentioned.

Counsel, indeed, concedes the abundant right of the
legislature to regulate the junk business, and admits that
such regulations as those just referred to are quite within
the legislative power of the State.

This concession is, we think, very properly made; and,
this being so, there is little ground left for an attack
upon the amendment of 1903 because of its alleged un-
reasonable and arbitrary requirement that a dealer in
or collector of junk, metals, or second-hand materials,
who buys or receives any stolen wire, cable, copper, lead,
solder, iron, or brass, used by or belonging to a railroad,
telephone, telegraph, gas, or electric light company, shall
make diligent inquiry to ascertain that the person selling
or delivering it has a legal right to do so.

When it is conceded that such a dealer may be prop-
erly subjected to punishment as a criminal if he receives
stolen property without actual knowledge that it has been
stolen, and merely because charged with notice of cir-
cumstances such as would have put an honest or prudent

man upon inquiry, it needs little argument to vindicate legislation with respect to particular kinds of personal property that the legislature in its wisdom presumably deemed to be more susceptible of theft than other property, when that legislation but adds the further requirement of diligent inquiry by the dealer with respect to the right of the seller.

It is urged as a criticism that the statute directs the junk dealer's inquiry to the question of the legal right of the seller to sell, rather than to the question of an original larceny. It ought to be unnecessary to say that if goods have in fact been stolen, a diligent inquiry into the right of the present possessor to make sale or delivery of them will very surely tend to disclose the larcenous origin of his title. Indirect questions in such a case will very probably bring out the truth as readily and as surely as the plump inquiry—"Did you steal these goods?" Or, at least, the legislature might so presume. For of course all such matters rest in legislative discretion.

Counsel suggests that diligent inquiry by a junk dealer respecting the legal right of one offering certain wire or other goods for sale might lead to perplexing questions that only a court of last resort could properly determine. The obvious answer is that a method of inquiry that would bring to light, in rare instances, even the occult and doubtful point in a vendor's title, would, if systematically adhered to, be reasonably sure in a greater number of instances to develop the fact that the goods under investigation had been acquired by theft.

We have said enough to indicate the character of the arguments employed in the effort to show that the act of 1903 is wholly arbitrary and constitutes so groundless an interference with the citizen's liberty of contract as to bring it within the denunciation of the due process of law clause of the Fourteenth Amendment. It seems to us that the object of the legislation is well within the

legitimate bounds· of the police power of the State and sustainable upon the principles discussed in *Mugler* v. *Kansas,* 123 U. S. 623, 661, etc., of which more recent applications are to be found in *Booth* v. *Illinois,* 184 U. S. 425, 429, and *Lemieux* v. *Young,* 211 U. S. 489. See also *Chicago, B. & Q. Ry. Co.* v. *McGuire,* 219 U. S. 549, 568.

Nor can the act in question be deemed to conflict with the "equal protection" clause because it places junk dealers, etc., in a class by themselves. The argument under this head is that if property of the kinds mentioned in the act is peculiarly susceptible of theft, there is no reason that all persons should not be subjected to the same rules with reference to its purchase. This needs no answer beyond a reference to the well-known fact, alluded to by the New York Court of Appeals in its opinion herein, that junk dealers provide an important market for stolen merchandise of the kinds mentioned, and that because of their experience they are peculiarly fitted to detect whether property offered is stolen property.· Plainly it cannot be said that the classification rests on no reasonable basis. It is unnecessary to rehearse the grounds upon which rests the authority of the States to resort to classification for purposes of legislation. The· citation of a few recent illustrative cases will obviate extended discussion. *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 562; *Louisville & Nashville R. R.* v. *Melton,* 218 U. S. 36, 52; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78.

The fact that the act of 1903 has reference to the property of only railroad, telephone, gas, and electric· companies, furnishes no ground for the plaintiff in error to invoke the "equal protection" clause of the Fourteenth Amendment. The failure of the legislature to extend the protection of the act to the like kinds of property when owned by manufacturers of equipment for railroads, telephone and telegraph lines, as well as when owned by the

companies operating such lines; or the failure to include the owners of blast furnaces and brass foundries, or other classes who, as claimed by counsel, are liable to losses by theft of articles of the like kinds, affords no footing for an attack by plaintiff in error upon the constitutionality of the act, for the reason that he does not bring himself within any of the classes that, according to the argument, are peculiarly susceptible to losses of the kind that the statute is designed to prevent, nor does he show that he has suffered any injury by reason of the failure of the legislature to extend the protection of the act to other classes of owners. *Tyler* v. *Judges,* 179 U. S. 405, 409; *Hooker* v. *Burr,* 194 U. S. 415, 419; *Hatch* v. *Reardon,* 204 U. S. 152, 160; *Southern Railway Co.* v. *King,* 217 U. S. 524, 534; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, 550.

So far, therefore, as plaintiff in error is concerned, the legislature has simply not extended the scope of the act so far as it might properly have done. The argument under this head concedes, and must concede, that the act is beneficial as far as it goes, the complaint being that it does not go far enough. But the Federal Constitution does not require that all state laws shall be perfect, nor that the entire field of proper legislation shall be covered by a single enactment.

The Court of Appeals, in the case before us, said with respect to this topic: "The legislature is presumed to have been familiar with current history and the decisions of the courts, which show that property of a certain kind, such as copper, brass, iron, etc., is frequently stolen from railroad, telegraph, and similar corporations, which cannot adequately protect it because it is scattered through the country along extensive lines of transportation or communication, and which is exposed to view and caption by the evil minded, who find their best market in the shops of certain junk dealers."

If the act required any defense against the criticism now under consideration, this expression would suffice.

It remains only to notice the second principal contention of plaintiff in error, which is that the construction placed upon the act of 1903 by the Court of Appeals is clearly erroneous, and that the situation is such that this court ought not to hold itself bound by that construction.

It is ingeniously argued that since the statute had never been judicially construed until the decision of the Court of Appeals in this case, and since that court (erroneously, it is asserted) injected into the act by construction two elements that are said not to be apparent from a literal reading—to wit, that the statute applies only to stolen property, and that the dealer need not ascertain the legal right of the seller, but need only make diligent inquiry to ascertain the same, the plaintiff in error is aggrieved by what is called the "judicial amendment" of the statute.

Although not distinctly invoking the prohibition of *ex post facto* laws, as contained in Art. I, § 10, cl. 1, of the Federal Constitution, the argument, if it have any basis, must be rested upon that prohibition.

It is sufficient to say that no such point appears to have been raised in the court below, although it might have been raised by an application for rehearing. Nor is any such point covered by the assignments of error in this court.

*Judgment affirmed.*