George **BASIARDANES**, Plaintiff,

v.

**CITY OF GALVESTON**, Defendant.

Civ. A. No. G–78–205.

United States District Court,
S. D. Texas,
Galveston Division.

May 13, 1981.

Matthew Horowitz, Houston, Tex., for plaintiff.

Robert V. Shattuck, Jr., City Atty., and Joe Dale Morris, Denton, Tex., for defendant.

## MEMORANDUM OPINION

HUGH GIBSON, District Judge.

### INTRODUCTION

This is a case that once again brings a land-use zoning ordinance into confrontation with a first amendment free speech claim. The facts in brief are as follows: The plaintiff owned a building at Galveston, Texas and commercially utilized it as an amusement arcade until he decided to increase the income of the premises by converting a part of it into an adult theater for the regular exhibition of pornographic but non-obscene, and therefore, constitutionally protected moving pictures. Contemporane-

ous with the plaintiff's manifestation of that intention by the making of structural alterations to the building, accompanied by advertisements to let the public prepare for coming attractions, the City of Galveston through its alert City Council enacted an ordinance which established a moratorium on the issuance of the necessary building permit, and then moved with dispatch and enacted Ordinance 78–1,[1] which amended the City's zoning ordinance to restrict the operation of adult theaters in certain defined areas which encompassed the plaintiff's property. The existence and threat of application of the ordinance discouraged the plaintiff from further developing and devoting the property to its highest and best commercial use, to-wit, a place for exhibiting strongly erotic but constitutionally shielded cinemagraphic productions. He felt this to be an unwarranted entrenchment upon his right of free speech and, after selling his property, brought the present action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution to recover money damages as measured by the loss of reasonably calculated rents and profits which an adult theater would have yielded.

The plaintiff brings forth the customary charges against the zoning amendment: that the definition of what constitutes an adult theater is vague; that the area zoned is too uncertain; that the prohibited area for the operation of adult theaters is so unreasonably restrictive as to assure that no such theaters can find a commercially viable location; and so the ordinance in purporting to regulate land-use in effect suppresses the flow of protected free speech. Plaintiff also contends that the licensing provisions of the ordinance constitute a prior restraint in violation of the first amendment and that the ordinance violates the equal protection clause of the fourteenth amendment.

The City of Galveston answers that the ordinance can stand upon its merits, and further that the plaintiff, by having sold the property in question and having none other in the zoned area, has lost standing to bring his complaint; and that much of the vagueness objection to the ordinance made by the plaintiff does not affect him nor operate to his detriment and consequently the plaintiff does not have standing to challenge such parts of the ordinance.

The claims of the parties will be briefly discussed.

## JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 1983, and 28 U.S.C. § 1343(3).

## STANDING

The plaintiff has heretofore divested himself of all property interest in the zoned area. Nonetheless, he claims, and it is an undisputed fact, that he owned property some nine months in the zone-affected area; that he took steps to convert a part of his building into a theater to exhibit commercially and regularly adult films as that term is defined in the ordinance; that the threat of the ordinance caused him to cease the structural work on the building and to terminate lease negotiations with a firm that was eager to locate an adult theater in Galveston and found his building desirable for that purpose.

Plaintiff asserts standing on several grounds. First, he claims that he has standing to attack the statute on its face because the statutory definitions are vague in violation of the first and fourteenth amendments and because the licensing provisions of the statute constitute a prior restraint in violation of the first amendment. Second, he alleges the statute violates the due process requirements of the fourteenth amendment because the ordinance is vague as applied to him. Third, he alleges that he has suffered injury in fact in that the zoning provisions have a significant impact on

---

1. Ordinance 78–1 is attached to this Memorandum Opinion as Appendix A and is codified in Galveston, Texas Code CH. 25 (1960), adopting, City of Galveston Zoning Standards art. 2 sec. 25–10 (1971). Violation of the ordinance is punishable by a fine not exceeding $200. Galveston Code sec. 1–7 (1960).

his first amendment rights to disseminate and receive protected speech. Although the plaintiff has standing to challenge the ordinance's zoning provisions as it operated against his property interest, he does not have standing to call into account the licensing or definitional aspects of the statute.

 To the extent that plaintiff attacks the definition of "Adult Motion Picture Theater" in section 51 of the ordinance as vague, facially, or as applied to him, plaintiff has no standing to litigate the issue.[2] Plaintiff acknowledges that his property was within the scope of the definition found in the ordinance. The definition is thus sufficiently precise to leave plaintiff in no doubt about whether his actions are covered.

Because the ordinance affects communication protected by the first amendment, plaintiff argues that he may raise the vagueness issue even though there is no uncertainty about the impact of the ordinance on his own rights. The Court does not agree.

Under exceptional circumstances, a person to whom an ordinance may constitutionally be applied will be allowed standing to challenge the ordinance on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. A litigant may be allowed to assert the rights of third parties under a claim that the ordinance is facially vague if the statute's deterrent effect on legitimate expression is both real and substantial and if the statute is not readily subject to a narrowing construction by the state courts.[3]

The Court is not persuaded that the Galveston zoning ordinance will have a significant deterrent effect on the exhibition of films protected by the first amendment. To the extent that any question exists as to the application of the statute, the ordinance is readily subject to a narrowing construction by the state courts.[4] Therefore, plaintiff has no standing to challenge the statute as facially vague.

Additionally, plaintiff has no standing to attack the licensing provisions of the ordinance. Plaintiff has no stake in the outcome of a determination of the validity of the licensing provisions. Under no circumstances has plaintiff been, or will plaintiff be, affected by this aspect of the ordinance.[5]

 Insofar as plaintiff claims injury in fact, the Court notes that the record is thin

2. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Hart Book Stores, Inc. v. Edminsten*, 612 F.2d 821 (4th Cir. 1979).

3. *Young v. American Mini Theatres, id.; Erznoznik v. City of Jacksonville, id.; Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

4. *See West v. State*, 514 S.W.2d 433, 448 (Tex. Crim.App.1974) wherein the court, on motion for rehearing, held that the term "sexual matters" was limited and restricted to the examples set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, 431 (1972).

5. In an appropriate case when freedom of expression is involved, a person may have standing to challenge an ordinance on the ground that it delegates overly broad licensing discretion to an administrative officer, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. *Freedman v. Maryland*, 380 U.S.

51, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965). However, this is not such a case. In this case, plaintiff could not apply for a license if he wanted to, nor could he be regulated by a "properly drawn" statute. Therefore, no justiciable controversy is before the court with respect to the licensing provisions. See *Midway Youth Football Ladies Auxiliary v. Strickland*, 449 F.Supp. 418, 421–22 (N.D.Ga.1978); *Morgan v. City of Detroit*, 389 F.Supp. 922, 930 (E.D.Mich.1975). However, without specifically ruling on this aspect of the ordinance, the Court is compelled to note that the licensing provisions constitute a clear instance of prior restraint under a system lacking in constitutionally required minimal procedural safeguards. *See, e. g., Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Southeastern Promotions v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 42 L.Ed.2d 448 (1975); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Freedman v. State of Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Staub v. City of Baxley*,

and equivocal with respect to plaintiff's damages. However, the plaintiff's claim of damages is sufficient to show that he had a monetary concern with the validity and operation of the ordinance, and not just a quixotic and pecuniarily impersonal solicitude for the constitutional rights of his fellow art exhibitors.[6] In short, the plaintiff has alleged a violated right and claims damages distinctive to him flowing therefrom. He has shown standing to sue.[7]

In summary, although the plaintiff has standing to challenge the ordinance as it operated against his property interest, he does not have standing to call to account and have adjudicated those portions of the ordinance that are not germane to his situation. The focus will therefore be on the terms of the ordinance that are operative to claims asserted by the plaintiff and which bear upon his property. The portions of the ordinance that fall outside that focus will not be examined.[8]

## VAGUENESS

Even if plaintiff was granted standing to raise the vagueness issue, the ordinance would withstand such a challenge.

355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Schneider v. New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

**6.** *See generally Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Schlesinger v. Reservist Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Massachusetts v. Melon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

**7.** It might be noted that the plaintiff comes aggrieved in two aspects: as one whose hand is stayed at the pump-handle of the free-speech flow, and as one athirst who, as a free-speech consumer, finds a dry water hole. In the second posture the plaintiff states that he is one who from time to time enjoys "X" rated movies and as such is a deprived devotee because of the strictures and chilling effect of the ordinance, and so has sufficient personal interest and standing to challenge the ordinance at any point of infirmity. Without questioning

The ordinance defines adult motion picture theaters in section (51) as follows:

*Adult Motion Picture Theater*: Any premises from which, under the laws of the State of Texas, minors are excluded by virtue of age unless accompanied by a consenting parent, guardian or spouse, and in which motion pictures, slides, or similar photographic reproductions are shown as the principal use of the premises or are shown as an adjunct to some other business activity which is conducted on the premises and constitutes a major attraction; and wherein such movies are shown on a regular basis; and not to include school or public auditoriums used for non-commercial purposes on an infrequent basis.

Section 43.24 of the Texas Penal Code which is incorporated into the ordinance prohibits exhibition of certain "harmful material" to persons under 17 years of age, and defines "harmful material" as material whose dominant theme, taken as a whole:

(A) appeals to the prurient interest of a minor, in sex, nudity, or excretion;

the plaintiff's avowed interest in the erotic, it is not such as to invest him with standing. Were it so, anyone could attack any law for first amendment reasons on a showing of nothing more than a vigilante spirit of law enforcement through court decree. See cases n.1, supra.

**8.** The Court is compelled to note that Section 52(a)(iii) is patently unconstitutional. Section 52(a)(iii) states:

Advertisements, displays, or other promotional materials for an Adult Book Store or an Adult Motion Picture Theater shall not be shown or exhibited so as to be visible to the public from any street, sidewalk or other public place.

This forbids without qualification the advertisement of adult movies. To prevent advertisement of a lawful product is patently unconstitutional. See generally, *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Linmark Assoc., Inc. v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

(B) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(C) is utterly without redeeming social value for minors.

Tex.Penal Code Ann. § 43.24(a) (Vernon 1974).[9]

The plaintiff claims that the above is a fog of vague verbiage and that he who speaks such words cannot be sure of what he has said and that their fluid meaning (like beauty to the eye of the beholder) lies only in the ear of the hearer.[10] It may be so. There is no novelty in noting that words do not have mathematical exactitude, but the law must do as best it can with irreduciable linguistic imprecision until there is discovered a way to package all passions and concepts into manageable mathematical notations.[11]

When a statute or regulation is challenged under the due process doctrine of vagueness, a court must look at the enactment from two angles: (1) whether it provides sufficient notice of what may not be done, and (2) whether it contains reasonably clear guidelines so as to prevent official

9. Apparently, and so defendant contends, this definition of harmful material is extracted from *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). In *Ginsberg*, the Supreme Court recognized that obscenity is a varying concept, and what is obscene as to minors may not be obscene as to adults. The court upheld a New York ordinance which prohibited the dissemination of material "harmful to minors," which was defined as follows:

> (f) "Harmful to minors" means that quality of any description or representation, in whatever form of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it:
>
> (i) predominantly appeals to the prurient, shameful or morbid interest of minors, and
> (ii) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors, and
> (iii) is utterly without redeeming social importance for minors.

The Supreme Court held that because "the New York Court of Appeals construed this definition to be 'virtually identical to the Supreme Court's most recent statement of the elements of obscenity. [*Memoirs v. Massachusetts*, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, 5],' *Bookcase, Inc. v. Broderick*, supra, at 76, 218 N.E.2d, at 672, [t]he definition . . . [gave] 'men in acting adequate notice of what is prohibited' and [did] not offend the requirements of due process." *Ginsberg v. New York*, 390 U.S. at 643, 88 S.Ct. at 1282, 20 L.Ed.2d at 206. However, since the Supreme Court decided Ginsberg, and prior to the enactment of Ordinance 78–1, the Supreme Court abandoned its definition of obscenity announced in *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and *Memoirs v. United States*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1977) and pronounced a new test for obscenity in *Miller v. California*, 413 U.S. 15, 23–25, 93 S.Ct. 2607, 2614–15, 37 L.Ed.2d 419, 430–431 (1973). The Supreme Court has yet "to decide what effect Miller will have on the Ginsberg formulation." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214, n.10, 95 S.Ct. 2268, 2275, n.10, 45 L.Ed.2d 125, 133, n.10 (1975). If the City was attempting to prohibit the viewing of these films by making it unlawful to show them, a question of overbreadth might be present. *See generally Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The Court notes, however, that the Texas Court of Criminal Appeals has addressed this issue in *West v. State*, 514 S.W.2d 433, 438 (Tex.Crim.App.1974) and found "no such vice of overbreadth." *West v. State*, 514 S.W.2d at 439.

In any event, since the City is not prohibiting speech but merely regulating it in such a manner that access to it and dissemination of it is not meaningfully restricted, this Court need only focus on whether the statute "is arbitrary and capricious, having no substantial relation to the general welfare," *Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir. 1980), *cert. denied* —— U.S. ——, 101 S.Ct. 240, 66 L.Ed.2d 112.

10. Additionally, plaintiff claims that the terms "school," "church," and "recreational facility where minors congregate" are impermissibly vague. *Compare Universal Amusement Co. v. Hofheinz*, Civil Action No. H–77–1178 *(S.D.Tx. October 5, 1977), aff'd in part and rev'd in part on other grounds, 616 F.2d 202 (5th Cir. 1980); and* Sullivan v. City of Houston, *Civil Action No. 79–164 (S.D.Tx. December 4, 1980);* with Stansberry v. Holmes, *613 F.2d 1285 (5th Cir. 1980). Whether these terms are sufficiently precise need not be decided since the plaintiff has no standing to raise the issue.*

11. *See Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222, 228–29 (1972); *Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir. 1980); *Hart Book Stores, Inc. v. Edministen*, 612 F.2d 821, 833 (4th Cir. 1979).

arbitrariness or discrimination in its enforcement.[12]

The language in the state statute, which is carried over by reference into the zoning ordinance, is lifted from several Supreme Court decisions which have wrested with recalcitrant words in an ongoing effort to forge and refine a definition that characterizes with acceptable certainty that which is obscene and beyond the pale of protected speech. Inasmuch as the Court finds below that the Galveston ordinance is merely a regulation of the place and manner of expression, without proscription of that expression of the type not forbidden by the first amendment, and that what is ultimately at stake is nothing more than a limitation on the place where adult films may be exhibited, it seems reasonable that a definition which is sufficient for a law providing for criminal sanctions is certain enough to be a standard for zoning. The Court so holds.

## PRIOR RESTRAINT

The lesson of *Young v. American Mini Theatres*[13] is that commercial establishments that purvey certain kinds of cinematographic material are subject to zoning controls if the restrictions are reasonably related to the operational effects of the controlled activity and not targeted at the speech content per se or so restrictive as to significantly impact upon or reduce the production, purveyance or access to protected speech.[14] Although the distinction between speech content that can not be censored and the operational effect that ensues upon its expression which may be subject to land-use legislation is not one that lends itself to a bright-line demarcation, the court has made it in *Mini Theatres*.

Ordinance 78-1 amended the Galveston zoning standards to permit the establishment of adult motion picture theaters in the light industrial, heavy industrial or central business districts, but prohibited the establishment of such a theater within 500 feet of any two bars, pool halls, liquor stores or a combination thereof; 500 feet of a residential zone; 1000 feet of another adult book store or movie theater; or 1000 feet of a church, school, public park, or recreational facility where minors congregate. Plaintiff's property was located in the central business district and was within 500 feet of two bars.

The plaintiff offered testimony from an adult theater exhibitor that the zoning ordinance would exclude virtually all "commercially viable" sites. His testimony was illuminated by maps of the city which showed

**12.** *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *International Society for Krishna Consciousness, Inc. v. Rochford*, 585 F.2d 263, 267 (7th Cir. 1978).

**13.** 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

**14.** While a classification and unequal regulation involving a suspect class or directly burdening fundamental rights such as fully-protected first amendment interests can only be justified if it serves a compelling state interest by the least burdensome means, *Dunn v. Blumstein*, 405 U.S. 330, 337, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969), such a classification and regulation involving other classes of constitutional rights need only serve a legitimate state interest by rationally related means, *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). And a classification created by a zoning law is subject to this minimal scrutiny standard, *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); see *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed.2d 303 (1926), as is a classification made by other police power regulation, *McGowan v. Maryland*, 366 U.S. 420, 425–27, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961); see *Lehman v. City of Shaker Heights*, 418 U.S. 298, 303, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974) (plurality opinion). The *Mini Theatres* plurality apparently considered that classification of sexually explicit materials would invoke only minimal scrutiny, 427 U.S. at 70–73, 96 S.Ct. at 2452–53. Justice Powell in effect applied the same level of scrutiny in his analysis, but did so not because he considered that erotic materials deserved less protection, but because they were not actually suppressed by the zoning ordinance. *Id.* at 78–80, 96 S.Ct. at 2456–57.

the areas affected by the zoning exclusion. There was some ambiguity in the testimony as to the percentage of total land area covered by the ordinance, the estimates ranging from 80% to 85%. This would leave ample territory for locating an adult theater in unzoned areas. But the plaintiff retorts that sites outside the zoned area would not be commercially viable, that the product must seek the market and not the market the product. "Commercial viability" is also, alas, an uncertain term. To support commercial inviability imposed by the ordinance, the plaintiff listed conditions sought after for profitable operation of erotic movies: proximity to other business establishments and locations where people congregate, and an environment that is safe and of pleasing melieu to prospective patrons.

Although *Mini Theatres* forbade zoning adult theaters out of existence or even imposing any meaningful restriction upon their operation, it did not guarantee that they would be selectively exempt from the reasonable economic burden that befalls some activity in every land-use program.[15] Again, the point at which a land-use related economic burden becomes a meaningful diminution of commercially expressed speech cannot be fixed by any pat formula. Let it be said in summation that if the ordinance leaves room enough for those who wish to exhibit erotic movies for profit to find ample area to do so, although not at the choice commercial sites, and for those who seek such fare to have easy access to it, then the ordinance strikes at the pocket book not at the Constitution, and the balance lies with the lawful exercise of the police power. The Court holds that the ordinance does not so impact upon the exercise of free speech as to violate the first amendment.[16]

## EQUAL PROTECTION

■ Plaintiff claims that the ordinance violates his fourteenth amendment right to equal protection. The Court finds no equal protection violation. Because the ordinance has only an incidental effect on presumably protected expression and first amendment interests are not directly threatened by the unequal treatment of "adult" and "non adult" establishments, the classification may be justified if it is rationally related to an important state interest.[17]

The purpose of the ordinance is to insure that the adverse operational effects of adult motion picture theaters will not contribute to the blighting or downgrading of the adjacent property and the surrounding neighborhood.[18] There is no question that the ordinance serves an important and substantial governmental interest. Nor is there doubt that the special regulation of adult motion picture theaters is rationally related to the state's interest.[19] As the Court of

15. As Justice Powell wrote in *Young v. American Mini Theatres*, 427 U.S. at 78, 96 S.Ct. at 2456, 49 L.Ed.2d at 300–31:

[T]he constraints of the ordinance with respect to location may indeed create economic loss for some who are engaged in this business. But in this respect they are affected no differently from any other commercial enterprise that suffers economic detriment as a result of land-use regulation. The cases are legion that sustained zoning against claims of serious economic damage. *See*, e. g., *Zahn v. Board of Public Works*, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074 (1927).

The inquiry for First Amendment purposes is not concerned with economic impact; rather it looks only to the effect of this ordinance upon freedom of expression.

16. This case is distinguishable from cases such as *Bayside Enterprises, Inc. v. Carson*, 450 F.Supp. 696 (M.D.Fla.1978) (Jacksonville ordinances effectively barred future access to adult entertainment market); *E & B Enterprises v. City of University Park*, 449 F.Supp. 695 (N.D. Tex.1977) (ordinance "greatly restrictive" of protected speech).

17. *Young v. American Mini Theatres*, 427 U.S. at 70–73, 96 S.Ct. 2440, 2452–53, 49 L.Ed.2d 310.

18. Ordinance 78–1, Section 52(a).

19. One might question whether an adult theater which exhibited that which was obscene with respect to minors under the Ginsberg formulation of obscenity would have the same deleterious effect upon the surrounding neighborhood as a theater which exhibited that which was obscene as to adults under Miller and therefore, whether regulation of the former is rationally related to the City's objective, the

Appeals for the Fourth Circuit stated in *Hart Book Stores v. Edmisten*,[20]

> Special regulation of one commercial enterprise with particular externalities but not of other enterprises lacking those secondary effects has long been recognized not to violate equal protection, *e. g., Hadacheck v. Sebastian*, 239 U.S. 394, 412–14, 36 S.Ct. 143, [146–47], 60 L.Ed. 348 (1915) (brickmaking); *Rosenthal v. People*, 226 U.S. 260, 270–71, 33 S.Ct. 27, [29–30] 57 L.Ed. 212 (1912) (junkyards), precisely because the enterprises are not similarly situated and the different treatment is warranted by the different secondary effects.

Finding no violation of equal protection rights, the Court will not invalidate the Galveston ordinance.

## CONCLUSION

The plaintiff has standing to bring this suit; the challenged ordinance is not vague insofar as it applies to the plaintiff's claims; nor is the zoned area unreasonably drawn or so expansive as to impact impermissibly upon free speech dissemination; and the ordinance does not violate the plaintiff's right to equal protection under the laws.

The ordinance being valid, the plaintiff's claim fails. Judgment will be rendered accordingly.

## APPENDIX "A"

### ORDINANCE NO. 78–1

AN ORDINANCE AMENDING SECTION 25–8, APPENDIX A OF THE ZONING STANDARDS—1971, CITY OF GALVESTON, BY ADDING THERETO IN SPECIFIED ZONING AREAS TWO NEW LAND USES TO BE CALLED ADULT BOOK STORE AND ADULT MOTION PICTURE THEATER; AMENDING SECTION 25–10 OF SAID ZONING STANDARDS BY DEFINING THE AFORESAID NEW LAND USES, AND PROVIDING SPECIAL REGULATION WITH RESPECT THERETO; PROVIDING FOR CRITERIA AND GUIDELINES FOR ISSUANCE OF SPECIFIC USE PERMITS FOR SAID NEW LAND USES; PROVIDING FOR REPEAL OF INCONSISTENT PARTS OF CONFLICTING ORDINANCES; PROVIDING FOR READING AND PUBLICATION BY DESCRIPTIVE CAPTION ONLY; AND PROVIDING FOR AN EFFECTIVE DATE.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GALVESTON, TEXAS:

SECTION 1. That pursuant to a determination made after public hearings held by the Planning-Zoning Commission of the City of Galveston on December 20, 1977, and by the City Council of the City of Galveston, on the 5th day of January, 1978, notice of such hearings having been duly advertised as required under the provisions of Article 1011(a–f), Revised Civil Statutes of Texas, as amended, the City Council of the City of Galveston finds and determines it to be in the best interest of the health, safety and general welfare of the citizens of the City of Galveston to amend the Zoning Laws of the City as more particularly set forth herein.

SECTION 2. That to the Light Industrial (LI), Heavy Industrial (HI), and Central Business (CB) Zoning Districts as set forth in Appendix A of Section 25–8 ("Uses of Land and Buildings") of the *Zoning Standards—1971, City of Galveston*, as amended, adopted under and incorporated

---

protection of its neighborhoods. The Court is satisfied that the requisite rational relationship exists.

**20.** *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 831 (4th Cir. 1979).

into the provisions of Chapter 25 ("Zoning") of the Code of the City of Galveston, 1960, as are hereby added under "specific use" the following uses:

"Adult Book Store
Adult Motion Picture Theater".

SECTION 3. That Section 25–10 ("Special Definitions and Explanations Noted in Use Regulations") of the *Zoning Standards —1971, City of Galveston,* as amended, adopted under and incorporated into the provisions of Chapter 25 ("Zoning") of the Code of the City of Galveston, 1960, as amended, is hereby further amended by adding thereto new subparagraphs 50, 51 and 52 which shall read and provide as follows, respectively:

"(50) *Adult Bookstore*: An establishment which has as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals and which under the laws of the State of Texas excludes minors by virtue of age unless accompanied by a consenting parent, guardian or spouse.

"(51) *Adult Motion Picture Theater*: Any premises from which, under the laws of the State of Texas, minors are excluded by virtue of age unless accompanied by a consenting parent, guardian or spouse, and in which motion pictures, slides, or similar photographic reproductions are shown as the principal use of the premises or are shown as an adjunct to some other business activity which is conducted on the premises and constitutes a major attraction; and wherein such movies are shown on a regular basis; and not to include school or public auditoriums used for non-commercial purposes on an infrequent basis.

"(52) *Special Regulations and Specific Use Permit for Adult Book Stores & Adult Motion Picture Theaters*:

(a) *Special Regulations.* It is recognized that "adults only" uses, because of their very nature, have serious ob-

jectionable operational characteristics, particularly when several of them are concentrated under certain circumstances which produce or result in a deleterious effect upon adjacent areas and the surrounding neighborhood. Special regulation of these uses is necessary to insure that these adverse effects will not contribute to the blighting or downgrading of the adjacent property and the surrounding neighborhood. These special regulations are set forth in this Sub-paragraph and are designed to prevent a concentration of these uses in any one area. These Special Regulations, and the uses which are subject to such Special Regulations are as follows:

(i) It shall be unlawful to hereafter establish any Adult Book Store or Adult Motion Picture Theater within 500 feet of the boundary line of any area zoned Single Family-1 (1F–1), Single Family-2 (1F–2), Single Family-3 (1F–3), General Residence (GR), Multiple Family-1 (MF–1) or Multiple Family-2 (MF–2), or within five hundred (500) feet of any two (2) of the following or combination thereof:

pool hall
liquor store
bar.

(ii) It shall be unlawful to hereafter establish any Adult Book Store or Adult Motion Picture Theater within 1000 feet of the property line of any other Adult Book Store or Adult Motion Picture Theater or within 1000 feet of the property line of a church, school, public park, or recreational facility where minors congregate. "Minors" means persons under 17 years of age.

(iii) Advertisements, displays, or other promotional materials for an Adult Book Store or an Adult Motion Picture Theater shall not be shown or exhibited so as to be visible to the public from any street, sidewalk or other public place.

(iv) All building openings, entries, exits and windows, for an Adult Motion Picture Theater or Adult Book Store shall be located, covered, or screened in such a manner as to prevent a view into the interior from any street, sidewalk or other public place.

(b) *Specific Use Permit—Provisions and Standards for Adult Book Store, Adult Motion Picture Theater.* Where an applicant for a specific use permit to operate or maintain an Adult Book Store or Adult Motion Picture Theater has made a complete compliance with all of the provisions of this Ordinance, all zoning laws and regulations of the City and all other applicable ordinances and laws of the City, the Planning-Zoning Commission and City Council shall use and consider the following criteria, guidelines and matters in determining whether such applicant shall be issued the specific use permit for which application has been made. Such Specific Use Permit shall be issued upon the City Council's making all of the following findings:

(i) That the proposed Adult Book Store or Adult Motion Picture Theater will not be contrary to the public interest or injurious to nearby properties, and that the spirit and intent of this Ordinance will be observed.

(ii) That the proposed Adult Book Store or Adult Motion Picture Theater will not enlarge or encourage the development of a "Skid Row" area.

(iii) That the establishment of an additional Adult Book Store or Adult Motion Picture Theater will not be contrary or deleterious to any program of neighborhood conservation, such as historic preservation, nor will it interfere with any program of neighborhood revitalization.

(iv) That all applicable regulations of this Ordinance and the Zoning Laws of this City will be observed."

SECTION 4. That upon the effective date of this Ordinance, Ordinance No. 77–85, adopted on November 17, 1977 is hereby repealed in its entirety, and that upon the effective date of this Ordinance, all other Ordinances in conflict herewith are repealed to the extent of such conflict only; that this Ordinance shall be read by descriptive caption at time of adoption and after having been made publicly available in the office of the City Secretary for not less than seventy-two (72) hours prior to adoption; and that this Ordinance shall be and become effective from and after its adoption and publication by descriptive caption only as required by law and Charter.

APPROVED AS TO FORM:

_____

ROBERT V. SHATTUCK, JR.
CITY ATTORNEY

I, PATSY M. POOLE, Secretary of the City Council of the City of Galveston, do hereby certify that the foregoing is a true and correct copy of an Ordinance adopted by the City Council of the City of Galveston at its regular meeting held on the _____ day of _____, 19____, as the same appears in records of this office.

IN TESTIMONY WHEREOF, I subscribe my name hereto officially under the corporate seal of the City of Galveston this _____ day of _____, 19____.

_____

Secretary of the City Council of the City of Galveston